CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

APR 13 2022

JULIA C. DUDLEY, CLERK
BY: _____
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | | | |
|---|---|---|---|
| UNITED STATES OF AMERICA | ) | Case No. 7:05-CR-00025 | |
| | ) | | |
| v. | ) | | |
| JOHN TIMOTHY UNDERWOOD, | ) | By: | Hon. Michael F. Urbanski |
| Defendant | ) | | Chief United States District Judge |

## MEMORANDUM OPINION

On March 30, 2021, John Timothy Underwood, represented by the Federal Public Defender, filed a "Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)" seeking reduction of his second § 924(c) sentence to time served. ECF No. 216. Underwood relies on United States v. McCoy, 981 F.3d 271 (4th Cir. 2020). The government filed a response in opposition to Underwood's motion on April 23, 2021, ECF No. 219, and Underwood replied. ECF No. 220. As discussed below, the court will **GRANT** Underwood's motion for compassionate release and reduce his sentence to 240 months.

## I.   BACKGROUND

On March 10, 2005, Underwood was charged in a five-count indictment alleging a conspiracy to distribute methamphetamine. ECF No. 3. On April 21, 2005, a grand jury returned a ten-count superseding indictment against Underwood and several co-defendants. ECF No. 45. A second superseding indictment was returned on August 5, 2005, alleging nine counts against Underwood. ECF No. 85. Pursuant to a plea agreement, Underwood pled guilty to one count of possession of more than fifty grams of a mixture containing

1

methamphetamine with the intent to distribute, in violation of 21 U.S.C. § 841;[1] and two counts of possession of a firearm in relation to a drug trafficking offense, in violation of 18 U.S.C. § 924(c).[2] ECF No. 109, at 2–3.

Prior to sentencing, a probation officer prepared a Presentence Investigation Report (PSR). ECF No. 212. The probation officer determined that Underwood was responsible for 103.6 grams of methamphetamine, which corresponded to a base offense level of 26 under the 2004 version of § 2K2.4(a) of the United States Sentencing Guidelines ("U.S.S.G." OR "Guidelines"). ECF No. 212, at 7. The probation officer applied a three-level reduction for Underwood's acceptance of responsibility, pursuant to U.S.S.G. §§ 3E1.1(a) and (b), which produced an adjusted offense level of 23. Id., at 3. Viewing Underwood's scant criminal history,[3] the probation officer assigned a total of three criminal history points, establishing a criminal history category of II. Id., at 10.

In assessing the recommended Guidelines sentencing range, the probation officer noted that Underwood "admitted that he distributed over 19 kilograms of methamphetamine over the course of the conspiracy." Id. at 15. Had Underwood not entered the plea agreement, his "base offense level would have increased to 38." Id. And had he proceeded to trial, "he would likely have not received credit for acceptance of responsibility." Id. In those circumstances, Underwood's Guidelines range would have increased to 262 to 327 months." Id.

---

[1] This charge is listed as count three in the second superseding indictment. See ECF No. 109, at 2.

[2] These charges are listed as counts four and ten in the second superseding indictment. See ECF No. 109, at 2–3.

[3] Underwood was twice convicted of driving under the influence, and once convicted of possession of marijuana and oxycodone for which he received a total of three criminal history points. See ECF No. 212, at 8–9. The oxycodone charge was dismissed following Underwood's completion of an alcohol safety course. Id. at 8.

However, because Underwood's plea resulted in a total offense level of 23, coupled with his criminal history category of II, "the guideline range for imprisonment [was] 51 to 63 months." Id. Pursuant to U.S.S.G. § 5G1.1(c)(2), this range was adjusted to "60 to 63 months" to comport with the statutorily required minimum sentence. Id. Additionally, the probation officer listed the statutory mandatory minimum and maximum terms for each count: (1) 5 to 40 years imprisonment for the count under § 841; (2) 5 years to life for the first count under § 924(c); and (3) 25 years to life for the second count under § 924(c). Id. The terms imposed for the § 924(c) counts were to be imposed consecutively to each other and any other sentence. Id.

Underwood appeared for sentencing on January 18, 2006. Neither party objected to the PSR. ECF No. 151, at 1. Underwood received the mandatory minimum sentences for each count: (1) 5 years for the count under § 841; (2) 5 years for the first count under § 924(c); and (3) 25 years for the second count under § 924(c). Id. The 30-year term for the § 924(c) violations was imposed consecutively to the 5-year drug sentence. Id. Underwood's total sentence was 420 months. He currently is housed at FCI Fort Dix and is scheduled to be released on May 23, 2035. Resp. in Opp'n, ECF No. 219, at 3.

Underwood seeks compassionate release under 18 U.S.C. § 3582(c)(1)(A) and an accompanying reduction of his second § 924(c) sentence to time served. Underwood argues that his current sentence is "excessively long and inconsistent with the present statutory scheme" and that his time served is greater than the sentence he would receive for the same offense today. Def.'s Mot., ECF No. 216, at 1. The government opposes any sentence reduction for Underwood. Resp. in Opp'n, ECF No. 219, at 3.

3

## II.   ANALYSIS

The compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), as amended by the First

Step Act, authorizes courts to modify terms of imprisonment as follows:

> The court may not modify a term of imprisonment once it has been imposed
> except that—in any case—the court, upon motion of the Director of the
> Bureau of Prisons, or upon motion of the defendant after the defendant has
> fully exhausted all administrative rights to appeal a failure of the Bureau of
> Prisons to bring a motion on the defendant's behalf or the lapse of 30 days
> from the receipt of such a request by the warden of the defendant's facility,
> whichever is earlier, may reduce the term of imprisonment (and may impose a
> term of probation or supervised release with or without conditions that does
> not exceed the unserved portion of the original term of imprisonment), after
> considering the factors set forth in section 3553(a) to the extent that they are
> applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . and that
> such a reduction is consistent with applicable policy statements issued by the
> Sentencing Commission.

Therefore, Underwood's requested relief requires the court to consider: (1) if he exhausted

his administrative remedies; (2) if so, whether there are "extraordinary and compelling

reasons" that warrant a reduction in his sentence; and (3) if so, what, if any, sentence

reduction is appropriate after considering the applicable 18 U.S.C. § 3553(a) factors.

   A.  Underwood has fully exhausted his administrative remedies.

The provision allowing defendants, in addition to the Bureau of Prisons ("BOP"), to

bring motions under § 3582(c) was added by the First Step Act to "increas[e] the use and

transparency of compassionate release." Pub. L. No. 115-391, 132 Stat. 5239 (2018). Before

bringing a motion before the district court, a petitioner must first exhaust his administrative

remedies. See 18 U.S.C. § 3582(c)(1)(A). A petitioner must satisfy one of two conditions,

whichever is earlier: (i) "the defendant has fully exhausted all administrative rights to appeal a

failure of the [BOP] to bring a motion on the defendant's behalf" or (ii) "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility[.]" Id.; see McCoy, 981 F.3d at 283.

Underwood requested compassionate release from the BOP on February 8, 2021. ECF No. 220-1, at 1. The warden did not respond to Underwood's request. See ECF No. 220, at 4. He filed his compassionate release motion with the court more than thirty days later, on March 30, 2021. See Def.'s Mot., ECF No. 216. Underwood thus satisfied the administrative exhaustion requirement under the second path provided by § 3582(c)(1)(A). See United States v. Muhammad, 16 F.4th 126, 129 (4th Cir. 2021) ("The text of § 3582(c)(1)(A) plainly provides that a defendant may file a motion on his own behalf 30 days after the warden receives his request, regardless of whether the defendant exhausted his administrative remedies."). In addition, the requirement that a petitioner complete certain steps before filing his motion is a claim-processing rule, rather than jurisdictional. Id. As such, it can be waived or forfeited. Id. at 130. The government does not contest that Underwood has exhausted his administrative remedies. Resp. in Opp'n, ECF No. 219, at 12 n.3. Accordingly, the court finds that Underwood has satisfied the statute's exhaustion requirements.

### B. Underwood presents extraordinary and compelling reasons to warrant a sentence reduction.

The court must next consider whether there are any "extraordinary and compelling reasons" that would warrant "reduc[ing] the term of imprisonment" imposed in Underwood's case. 18 U.S.C. § 3582(c)(1)(A). In McCoy, 981 F.3d at 284, the Fourth Circuit held that district courts may consider "any extraordinary and compelling reason for

[compassionate] release that a defendant might raise." McCoy, 981 F.3d at 284 (citing United States v. Brooker, 976 F.3d 228, 239 (2d Cir. 2020)). In so finding, the court rejected the notion that district courts are constrained by the policy statement found in U.S.S.G. § 1B1.13 and the application note that accompanies the policy statement. See discussion, McCoy, 981 F.3d at 280-84.

The McCoy court also found that the First Step Act made a "monumental change" to sentencing calculations under 18 U.S.C. § 924(c). Id. at 275 (citing Brooker, 976 F.3d at 230). Prior to the First Step Act, simultaneous convictions, and subsequently sentences, under § 924(c) were "stacked," meaning that "a conviction was treated as 'second or subsequent,' triggering the 25-year minimum sentence, even if the first § 924(c) conviction was obtained in the same case." McCoy, 981 F.3d at 275. The First Step Act changed the sentencing structure for multiple convictions under § 924(c)—the statute now requiring a new violation "that occurs after a prior conviction under [the] subsection has become final" to trigger the mandatory minimum sentence of 25 years. 18 U.S.C. § 924(c)(i). "Under § 403 of the First Step Act, that is, the 25-year mandatory minimum is 'reserved for recidivist offenders, and no longer applies to multiple § 924(c) convictions obtained in a single prosecution.'" McCoy, 981 F.3d at 275 (quoting United States v. Jordan, 952 F.3d 160, 171 (4th Cir. 2020)). The practical result of the change is that where defendants once faced a mandatory minimum sentence of 25 or 30 years when convicted of two firearms offenses in a single prosecution, they now face a mandatory minimum sentence of 5 years on each offense, for a total of 10 years. Redd, 444 F. Supp. 3d at 720.

In <u>McCoy</u>, which consolidated four cases from lower district courts, each defendant had received a decades-long sentence, largely driven by his "stacked" § 924(c) convictions. The defendant in <u>McCoy</u> received a "mandatory 35 year sentence . . . driven almost entirely by a 32 year minimum sentence under § 924(c)." <u>McCoy</u>, 981 F.3d at 285 (citing <u>McCoy v. United States</u>, 2020 WL 2738225, at *5 (E.D. Va. May 26, 2020)). Likewise, the defendants in <u>United States v. Bryant</u> "each received a 45 year mandatory minimum sentence under § 924(c), including two consecutive 20 year sentences for 'second and subsequent' convictions." <u>McCoy</u>, 981 F.3d at 285; see <u>United States v. Bryant</u>, 2020 WL 2085471, at *1 (D. Md. Apr. 30, 2020).

The <u>McCoy</u> court acknowledged that the change to § 924(c) does not apply retroactively to sentences imposed before December 21, 2018. <u>Id.</u> at 275. But the court distilled two features of stacked § 924(c) sentences that led to finding that the defendants met the "extraordinary and compelling reasons" standard: (1) "the sheer and unusual length of the sentences," and (2) the "'gross disparity' between those sentences and the sentences Congress now believes to be an appropriate penalty for the defendants' conduct." <u>Id.</u> at 285. The court concluded that the district courts' consideration of "the First Step Act's declaration of the appropriate level of punishment under § 924(c)" to be proper "in assessing the defendants' cases, on an individualized basis, for compassionate release." <u>Id.</u> at 275. Thus, under <u>McCoy</u>, the district court must conduct an "individualized assessment" of the defendant's circumstances when considering whether a defendant's stacked § 924(c) sentences constitute an "extraordinary and compelling reason" warranting a sentence reduction. <u>Id.</u> at 286.

7

Underwood argues that the disparity between the stacked § 924(c) sentence he received and the one he would receive for the same offense today is an "extraordinary and compelling reason" for his release. Def.'s Mot., ECF No. 216, at 3. Underwood's sentence is comprised of 5 years on the drug conviction, 5 years on the first §924(c) conviction and 25 years on the second § 924(c) conviction. Under the current statutory scheme, because Underwood had not yet been convicted of the first violation prior to committing the second violation, the mandatory minimum sentence for both § 924(c) charges would be 5 years. See 18 U.S.C. § 924(c)(1)(A)(i). Under U.S.S.G. § 2K2.4(b), Underwood's Guidelines sentence would be the minimum term of imprisonment required by statute, or 5 years on each count. Thus, if Underwood were sentenced today, he likely would be sentenced to 15 years, rather than the 35 years he is currently serving, reflecting the substantial change in "what Congress has now deemed an adequate punishment for comparable § 924(c) conduct." McCoy, 981 F.3d at 285 (quoting Redd, 444 F. Supp. 3d at 723). The court finds the "gross disparity" in sentencing between the sentence Underwood received in 2005 and the sentence he would likely receive today for the same conduct to be an "extraordinary and compelling reason" for relief under § 3582(c)(1)(A). McCoy, 981 F.3d 285–86; see also United States v. Brown, Nos. 3:15-cr-00017, 3:06-cr-00021, 2021 WL 2389881, at *10 (W.D. Va. June 21, 2021) (determining that the "gross disparity" between defendant's sentence of 120 months and a modern sentencing range of 37–46 months for the same conduct was an "extraordinary and compelling" reason warranting sentence reduction).

Citing Underwood's plea bargain, the government argues that Underwood's sentence was not of an "unusual length," nor does it reflect a "gross disparity" between his sentence

and the sentence Congress now views as an appropriate penalty for § 924(c) violations. Resp. in Opp'n, ECF No. 219, at 11–12. The government points out that the PSR indicates that, "absent the plea agreement, Underwood's guideline range would have been 262 to 327 months for the drug counts alone and he still would have faced the mandatory consecutive terms associated with the two Section 924(c) counts." Id. at 11. The government contends that, "if Underwood had been charged under today's sentencing scheme, the government may not have agreed to the same or similar terms in a plea agreement." Id.

The government's hypothetical new plea agreement is unpersuasive, as "this court has repeatedly rejected attempts by the government to argue it would have chosen a different prosecutorial strategy had different law governed at the time." United States v. Steppe, 3:16-cr-22, Dkt. 328, at 5 (W.D. Va. Apr. 20, 2021); see United States v. Smith, 379 F. Supp. 3d 543, 548 (W.D. Va. 2019) ("The retroactive assumption suggested by the government simply is too speculative a basis on which to determine [a defendant's] eligibility for a sentence reduction."). "[S]uch a speculative claim is insufficient" as one could engage in many hypotheticals about what "might have been different at the time" Underwood was charged. United States v. Stanback, 377 F. Supp. 3d 618, 624 (W.D. Va. 2019).

The government also argues in support of its hypothetical new plea agreement or absence thereof that a holding from Bousley v. United States, 523 U.S. 614 (1998) applies here. Resp. in Opp'n, ECF No. 80, at 11–12. Bousley raised an "actual innocence" claim in a motion for habeas corpus relief under 28 U.S.C. § 2255, claiming that he unintelligently pled guilty to a § 924(c)(1) charge in his indictment and that, under intervening Court precedent, the government had misinformed him of the elements of his charge. Bousley, 523 U.S. at

617–18. But because the petitioner procedurally defaulted the claim by failing to raise it during an appeal of his sentence, he could only raise the claim in habeas if he could demonstrate either "cause and actual prejudice, or that he [was] actually innocent." Id. at 623 (internal quotations and citations omitted). In remanding the case to permit the petitioner to make a showing of actual innocence as to the § 924(c)(1) charge, the Court noted that on remand, the government should be permitted to present any admissible evidence of the petitioner's guilt even if the evidence was not presented in the plea colloquy and would not otherwise have been offered. Id. at 24. The court also held that "[i]n cases where the Government has forgone more serious charges in the course of the plea bargaining, petitioner's showing of actual innocence must also extend to those charges." Id.

Here, Underwood does not dispute the charges originally brought against him or in his plea agreement, but rather the disproportionate sentence he received when viewed under the current sentencing guidelines for his conduct. The government does not explain how Bousley applies in Underwood's case or cite any cases where Bousley has been applied in the context of a compassionate release motion. The court finds that Bousley does not support the government's contention that if Underwood were sentenced today the government would pursue all the charged offenses and decline to negotiate a plea agreement. Rather, it addresses the showing a petitioner must make when seeking to establish his actual innocence. Bousley's requirement for bringing a procedurally defaulted actual innocence claim is of no import here.

Based on the foregoing, the court finds that under the holding in McCoy, Underwood has shown that he is eligible for a sentence reduction under § 3582(c)(1)(A)

because he has demonstrated an extraordinary and compelling circumstance based on a sentence disparity.

C.   <u>A sentence reduction is appropriate after considering the § 3553(a) factors.</u>

Having found that an extraordinary and compelling reason exists for a sentence reduction, the court "must 'consider[]' the § 3553(a) sentencing factors 'to the extent that they are applicable' in deciding whether to exercise its discretion to reduce the defendant's term of imprisonment." <u>United States v. High</u>, 997 F.3d 181, 186 (4th Cir. 2021) (quoting 18 U.S.C. § 3582(c)(1)(A)). Those factors include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for—
>
> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—
>
> (i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

(ii) that, except as provided in section 3742(g), are in effect on the date the
defendant is sentenced; . . . .

18 U.S.C. § 3553(a). Here, the government argues that the § 3553(a) factors counsel
against granting a sentencing reduction. Resp. in Opp'n, ECF No. 219, at 12. After
considering the applicable factors, the court will exercise its discretion to reduce
Underwood's term of imprisonment to a term of 240 months.

Turning first to the nature and circumstances of the offense, the court recognizes that
Underwood's offense conduct was undoubtedly serious. Underwood was first arrested
following a November 2004 search of his residence in which law enforcement found
thirty-seven firearms, drug paraphernalia, and evidence of distribution. PSR, ECF No. 212,
at 5; see Resp. in Opp'n, ECF No. 219, at 3. Underwood admitted to drug trafficking and
was released. Resp. in Opp'n, ECF No. 219, at 3. At this point, Underwood had an
opportunity to halt his criminal conduct, and as the government points out, Underwood
"promis[ed] law enforcement and the Court that he would cease his illegal and dangerous
activities." Resp. in Opp'n, ECF No. 219, at 11. However, in April 2005, pursuant to a valid
search warrant, law enforcement searched Underwood's home and found a mixture of
methamphetamine, three more guns,[4] and paraphernalia. PSR, ECF No. 212, at 6.
Underwood was arrested for a second time on April 4, 2005. As noted in the PSR, "[b]ased
on Underwood's own admission, he is responsible for distributing four and one-half ounces
of methamphetamine per week over a three-year period," accounting "for a total of 19.9

---

[4] Underwood points out that, "[l]ike many residents of rural America, [he] collected firearms." ECF No. 220,
at 3. Nevertheless, Underwood's combination of large quantities of illegal drugs and firearms is dangerous
and is precisely the conduct Congress intended to address by making a sentence under § 924(c) run
consecutively.

kilograms of methamphetamine." PSR, ECF No. 212, at 7. Ultimately, Underwood was held accountable for 103.6 grams of methamphetamine pursuant to his plea agreement. See id. The PSR reflects that this reduction was possible because Underwood "was very truthful and candid with both law enforcement officials and the probation officer," providing them with "an extensive proffer" regarding his involvement in the conspiracy and accepting responsibility for his actions. See id. Although Underwood willingly accepted responsibility for his actions, the serious nature of his offenses and the fact that he chose to continue his distribution following his release from custody in November 2004 weigh against reducing his sentence.

By contrast, certain history and characteristics of the defendant weigh in favor of reducing his sentence. As Underwood emphasizes, his offense of conviction was free from violence, his criminal history includes no violent offenses, and the same offense conduct and criminal history would yield a significantly lower mandatory minimum sentence today. Def.'s Mot., ECF No. 216, at 5; PSR, ECF No. 212, at 8–10. Additionally, Underwood has exhibited good behavior in prison and taken important steps toward rehabilitation, including attempting to seek drug treatment. See Def.'s Mot., ECF No. 216, at 5. Likewise, Underwood's prison records contain no incidents of violence. See Def.'s Mot., ECF No. 216, at 5; id. 216-2, at 1–2. Underwood's non-violent character and his record since being incarcerated weigh in favor of a sentence reduction.

According to the PSR, Underwood and his siblings "recount a childhood that involved alcoholic parents, where their father would often become physically abusive to his mother." PSR, ECF No. 212, at 11. It is in this environment of addiction and violence that

Underwood "first drank alcohol and had his stomach pumped at age five." See Def.'s Mot., ECF No. 216, at 2. From this upbringing, he experienced depression and attempted suicide on multiple occasions, including one attempt during his guilty plea hearing. Id.; PSR, ECF No. 212, at 13. Despite these mental and emotional challenges, Underwood has made progress in prison and completed nearly 900 hours of educational courses, including extensive courses on automotive repair and maintenance. Def.'s Mot., ECF No. 216, at 6; see Def.'s Mot., ECF No. 216-3, at 1 (detailing Underwood's education course history). Thus, despite facing decades of incarceration, Underwood has used his time to develop skills that will enable him to become a productive member of society upon his release. Indeed, Underwood "plans to work in the automotive field when he is released from prison . . . [b]uilding on his experience working on F-15 jets in the United States Navy, his associate degree in machine tools, and his automotive repair coursework in prison." Def.'s Mot., ECF No. 216, at 7. The court finds that Underwood's history and characteristics, including his family history and subsequent mental health issues, coupled with his extensive efforts toward rehabilitation, weigh in favor of reducing his sentence.

Turning to the next factors, the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, and to afford adequate deterrence to criminal conduct, the court finds that a sentence reduction would be sufficient to accomplish these goals—especially given Congress's current view on the appropriate punishment for Underwood's conduct. As Underwood has served more than 17 years in prison—and his sentencing guidelines would call for a sentence of no more

than 15 years if convicted today for the same crimes—these factors weigh in favor of a sentence reduction.

Regarding the next two factors, since being incarcerated in the federal system, Underwood has had several minor disciplinary infractions including the possession of, and being under the influence of, K2.[5] Def.'s Mot., ECF No. 216-2, at 1. But critically, and as mentioned above, Underwood has no violent infractions on his disciplinary record or in his criminal history. Though his infractions respecting K2 indicate that Underwood still struggles with drug use, Underwood will benefit from five years of supervised release to assist him with his reentry, including mandatory drug testing and treatment and mandatory mental health treatment. Def.'s Mot., ECF No. 216, at 5. Moreover, as Underwood points out, at the age of 53 he "poses a relatively low risk of recidivism." Def.'s Mot., ECF No. 216, at 6. The court finds that Underwood's age and disciplinary record weigh in favor of reducing his sentence. Similarly, given Underwood's prolific educational record while in prison, the court does not see how maintaining his multi-decade sentence would provide significantly more needed educational or vocational training, medical care, or other correctional treatment in the most effective manner, especially considering the requirements of Underwood's 5-year supervised release and his plans for a career. This factor weighs in favor of reducing Underwood's sentence.

Looking at the kinds of sentences available and the applicable guidelines range, Underwood would face a shorter sentence for his stacked § 924(c) charges if he were sentenced today. Including the count under § 841(a) and (b)(1)(B), if sentenced today, the

---

[5] "K2" is a synthetic version of THC, the psychoactive ingredient in marijuana. Spice/K2, Synthetic Marijuana, DEA, https://www.dea.gov/factsheets/spice-k2-synthetic-marijuana (last viewed April 12, 2022).

sentencing guidelines would call for a sentence of 180 months.[6] This stands in stark contrast to his actual sentence of 35 years, and thus this factor weighs in favor of reducing Underwood's sentence.

After considering the parties' arguments and the applicable § 3553(a) factors, the court concludes that a sentence reduction is warranted in Underwood's case. The court finds that Underwood's current sentence is greater than necessary to achieve the statutory sentencing objectives and that a lesser sentence, correctly applying the current version of the Guidelines, would adequately reflect the magnitude and duration of Underwood's criminal conduct. Underwood was arrested on April 4, 2005, and has been in federal custody since that time, a span of more than 17 years.

Given the circumstances of this case, including Underwood's history and characteristics, both positive and negative, and the PSR's recommendation for minimum sentencing, the court concludes that a sentence of 240 months is appropriate. Specifically, the court finds that a 240-month sentence is sufficient, but not greater than necessary, to reflect the seriousness of Underwood's conduct and criminal history, promote respect for the law, provide just punishment, afford specific and general deterrence, and protect the public. See 18 U.S.C. § 3553(a).

## CONCLUSION

For the reasons stated herein, the court will **GRANT** Underwood's motion for compassionate release, ECF No. 216. The court finds that a sentence reduction to 240

---

[6] This range encompasses the two 60-month mandatory minimum Guidelines sentences for the § 924(c) charges and a 60-month minimum sentence for a charge under § 841(a) and § 841(b)(1)(B). See PSR, ECF No. 212, at 7.

months is appropriate given the circumstances of this case. The clerk is directed to send a copy of this memorandum opinion and the accompanying order to Underwood, his counsel of record, and the United States.

It is so **ORDERED**.

Entered: 04/13/2022

Michael F. Urbanski
Chief United States District Judge